May it please the Court, my name is Douglas Nelson on behalf of the Petitioner. As a preliminary matter, I'm sure the Court is probably wondering, why hasn't this case been remanded or reopened to update current country conditions? Because at the time that the judge made his decision, Saddam Hussein and the Ba'ath government had only recently been overthrown. Well, at that time, we were also optimistic that the future would be better for Iraqis. And as we all know, and have observed in the news and read in the papers, that circumstances have not improved. In fact, in particular to Christians, they are quite brutal. So why hasn't this case been reopened? Because this is what is happening in the San Diego Immigration Court. Where there's a negative credibility finding, and the case is reopened for changed country conditions, the judges almost invariably say, I denied him because I didn't believe him the first time, and I'm going to deny him again and affirm my decision, no matter what the country conditions are, because I didn't believe him. And until the board of the Ninth Circuit addresses the credibility findings, this case is a non-starter if we were to reopen it again. So we need a determination on the credibility of this respondent. Can I ask you a question? Something that concerns me in this case. He's persecuted, let's say, in Iraq. Let's say he is, because the board assumes that, basically. He's persecuted in Iraq by Saddam's government. But a large factor in that is because he's a Chaldean Christian. That's why they don't trust Chaldean Christians. Correct? That's why he's persecuted. So the Saddam government falls. If that's all the evidence that we have in this record, how does that demonstrate, we're assuming past persecution, never mind the credibility question at this moment, how does that demonstrate that there's been a change, country conditions, that have eliminated his well-founded fear of persecution? It looks to me like this record is just too bare of information, perhaps. Well, in fact, yes. We do need additional information regarding current country conditions to see whether he has a well-founded fear of persecution. But even then they didn't have information that showed country conditions were wonderful. That's correct. They had nothing. They just said Saddam fell. That's the end of it. That's correct. Is that good enough? No, Your Honor. If this client or if this petitioner is found credible, then he has established past persecution, which automatically raises the presumption he has a well-founded fear of future persecution. And the burden shifts from the petitioner to the government. And the government doesn't have to show that the Ba'ath Party is going to harm him. The government has to show that it's safe for him to return. And that we believe they will not be able to show if the credibility determination is upheld, and this is returned for further evidence. Well, here's the problem with the credibility thing. The BIA didn't really decide it. Correct. And I think the Supreme Court has sort of hinted to us that we shouldn't be running around deciding things like that in the first instance. If you're right, I mean, if it is, I might have put words in your mouth, if it is true that the BIA is wrong about changed country conditions, shouldn't this case be sent back to the BIA and they be told, listen, you guys decide this case? Yes, I think it should be, because they put us all in a bad position here. They shirked their duty, I believe, when it came to the arguments, because we raised all of these arguments with the board. However, I hope that we can accomplish more than just a simple remand to the board so that it can make a decision on these things. And I have, I believe, adequately explained why. Your arguments are that what the IJ based his adverse credibility findings on, that none of those items went to the really heart of this matter. Not only did they not go to the heart of the matter, but when there's an inconsistency in the record, the judge has to offer the petitioner an opportunity to explain. And if that explanation is plausible and believable, then the court must accept it. And that's what happened repeatedly in this case. But the judge didn't recognize those plausible explanations. Rather, he dug in and he remained firm on his initial take, despite the explanations, that the respondent was not credible. This was all done through an interpreter. Correct. And as you read the transcript, you can see that these proceedings are far from perfect. They're never perfect. We can't throw the baby on the machine. The recording machine even broke down during this case, does it? I'm sorry, Your Honor? Is this the case where the recording machine broke down? Well, that happens so frequently. I know. It's quite a severe problem. I can't address that. I don't know. I don't recall. But it happens very frequently. What happens if we send it back to the BIA for credibility determination? Does it send it back to the IJ? Or you have the same argument in front of the BIA, I suppose. That's a large problem right now. I practice this on a daily basis, and the judges are upset with the board, and the board is upset with the judges, and each accuses the other of passing the buck. And so either scenario could happen. They could simply send it to the judge incomplete, making only a comment or two about the credibility, or they may examine the whole thing and send it to the judge and change the decision or affirm it. But we can't make decisions based on your representation or even our feelings that the BIA and the immigration system has fouled up. I mean, we've got to make it based on the law. And it seems to me the Supreme Court has told us we ought to give. If an administrative agency has failed to make findings and such that it ought to be making, our job is to send it back and say, Listen, guys, the reason you gave, if we said this, the reason you gave for not granting asylum is wrong. Now, you now decide this case, applying the correct law. And that's their job in the first instance. Or we can look at the transcript and the record, and we can tell the BIA or the immigration judge that none of these items that the immigration judge thought warranted an adverse credibility finding went to the heart of the matter. And we've made rulings where we've overturned adverse credibility findings and found that the witness was credible and sent the matter back. I believe that without instruction. That's happened too, hasn't it? Yes, Your Honor. Where the BIA hasn't ruled, correct? I'm sorry. Where the BIA has not ruled, either implicitly or explicitly. Is that correct? And even where the BIA has ruled. But, yes. It's quite different. But I think that if this Court sends it back. All you've got to do is read some of my case. Yeah. I believe, Your Honor, is that if this Court sends it back to the Board without any comment, just simply remanding it, but without any comment regarding credibility, we have no idea what the Board is going to do with it. And they could do many things, which may not result in a solution to the case. I think that you're correct in that you can make a comment that there appears to be a problem with the credibility findings, that they do not address the heart of the matter, that the judge did not believe the plausible and consistent explanations that the petitioner provided. Well, let's see. If we did that, we send it back to the Board. Let's say we just send it back to the Board for the credibility finding. And on your theory, anyway, it may be right, it may be wrong, but on your theory, the reasons weren't good enough, right? Correct. But the Board foolishly decides, oh, yeah, the credibility reasons were good enough, and therefore he wasn't credible. I take it the case then comes back to us, and in the meantime, he still stays here? Does he know? That's correct. The case will come back to you, and until we get a decision on the credibility, even if we reopen the case, we're back to nothing because the judge will say, I found him not credible the first time, the Board sustained my decision, and no change in country conditions is going to change my opinion. So we've got to get a decision on this. My objective is to get it sooner than later, and I would like to get it from this Court, or at a minimum, that this Court give instructions to the Board and state that the credibility determinations by the judge are flawed or appear to have problems which should be addressed by the Board so that we have some direction and we can reach a conclusion to this case. My time is up. Thank you. We've still got six seconds. May it please the Court, Mary Jane Condo representing the Attorney General, the respondent in this matter. The Board correctly concluded in this case that the past harm that this petitioner suffered was not related to his religion. It was related to political matters based on the Saddam Hussein government, and that government was overthrown, indeed, before the immigration judge even entered his opinion in this case. There were three incidents. First, he was arrested by, he said, a police gang and the Security Ba'ath Party members, not because of his religion. He testified that he was being tutored in math by one of his teachers, and there were some other students, and they were suspected, he was accused by these police and Security Ba'ath Party members, of belonging to the Assyrian Democratic Party. He was detained, beaten, and cursed. Well, the Assyrian Democratic Party, the Assyrians are all Christians, right? I don't know. Oh, sure they are. You go back. We know that. But the problem is, well, the issue, though, is he wasn't arrested because he was suspected of being Assyrian or suspected of being Chaldean. It was because they accused him of writing pamphlets and distributing pamphlets on behalf of this political party. He wasn't picked up because he was suspected of being Chaldean or Assyrian. He was accused of acting on behalf of this opposition political party. That was the reason. That was in 1992. In 1994, he was arrested and accused in an incident that he described in his testimony, the police fabricated a story in order to blackmail his family. They accused them in their store of selling outdated goods and possibly laundering money. That's what he said. The police were trying, you know, so it's corrupt police officials. He was held. Eventually his father paid a fine or a bribe, and the police released him. And finally, when he was in his technical school, the Fedayeen Saddam wanted to recruit him to their fanatical organization, and he didn't want to join. Didn't he say he was a Christian? He didn't want to join? He never said that he told those people that he was a Christian. I don't know if they knew or not. He never said that was discussed. He testified it was against his Christian principles. And by the way, it's against any sort of decent person's beliefs as far as I'm concerned. He testified that that group would commit suicide or kill other people based on Saddam Hussein's order, and that's what they did. I mean, that's just not Christian principles, I think, that would oppose that. It would be most faiths, I would think. And even people who aren't devout in any faith, I think, would oppose those goals. Now, because the Saddam government was overthrown before this case was even finished, the petitioner at his last hearing, the immigration judge said, aren't you aware Saddam was overthrown and the Ba'ath Party was overthrown? Yes, I am. So he gave him a chance. What do you fear? And he said his testimony was he fears, and this is the quote, Muslim people, that's their way, killing and deceiving. They would do anything to put anybody in trouble, and they accuse people of false accusations, and they ask for bribes in return for not doing so to you. That's at pages 197 and 198. That was the sum total of his, well, that's not true. Well, Saddam's government was essentially Muslim, was it not? Well, yes, Your Honor. The population, only 3% of the population is Christian. Exactly. And it seemed to me that maybe it's just bubbling up from his declarations and his testimony, but it looks to me like he's saying, well, part of my problem is with that government, and part of the reason they focused on my father and on me is because we're Chaldean Christians. That's the difficulty. That's the striking part of everything he says. And they put upon him, because he's Chaldean Christian, get away with it. They're suspicious of him when he touches base with an Assyrian math teacher because those guys are Christian, and they think there's something suspicious going on. I hear these Christians talking to each other. I mean, the whole thing has this Christian overtone in it. And if indeed that's part of what was going on between, and what else could he say? The government didn't say anything sensible at that hearing about Saddam's fall. They just said he fell. Big deal. So else he says, well, it's just more Muslims still there are going to cause me more problems. It's the same thing. That's the best he could say at that time, I should think. But if indeed he was, if indeed, as we assume, he had passed persecution because the BIA assumed it, if indeed we assume that, isn't it the government's burden to come in and show that something significant has changed in the country? Yes, Your Honor, it's the government's burden to rebut the presumption that he has a well-founded fear of persecution. And that's what the judge and the board determined. The fact that Saddam fell rebuts the presumption. And that's exactly what we're talking about here. Not just Saddam, but the Ba'ath Party also. The fact that Saddam and his party fell rebuts the presumption, period. That's really the question in front of us. Does a mere fall of a government, of that government, rebut the presumption, period, right? Yes, Your Honor. That's the question. Yes, Your Honor. And the fact is that as I've described these incidents, also I talked about what his testimony was. In his written filings, in his declaration, he didn't say anything about any harm. He said he was a Chaldean Christian. Beyond that, he never mentioned that again. In his asylum filing? In his declaration, his declaration at 369 to 73, he doesn't mention it. In his written asylum application, which is at 356 to 68, he does say, among all his other descriptions of other incidents, he says, the Iraqi government believes Chaldean Christians oppose it. He does say that in the application, not in the declaration. I am a Chaldean Christian, a group which the Iraqi government believes opposes it. Right, that's in the written application. Yeah. Well? It does say that. But, Your Honor, he doesn't say that any of these, well, the Iraqi government at that time was Saddam. At that time, sure. It was Saddam and it was the Ba'ath Party. What's the U.S. government at this time? I'm sorry, I didn't hear your question. The fact that a government is represented by a particular person, in this case Saddam, who's a dictator, doesn't mean that when that government falls, everything's wonderful. That's not the issue here, Your Honor. The question is whether It is the issue because you have to show that it's wonderful. We're assuming that he was persecuted and now you have to show that Not that he'll be safe there, Your Honor. Frankly, I'm not sure I would represent that anyone would be safe there. There's no question that there's It's a question that the attitude of the Iraqi government has changed towards him. The IJ says even Saddam had a Chaldean Christian in his government. Yes. No problem. But we're assuming that he was persecuted. We have to assume that. He was persecuted by that government. That government is no longer there. I don't, Your Honor, I think the question is whether the evidence compels the conclusion that he was harmed by that government. He was harmed by the Ba'ath Party. He was harmed by loyalists to Saddam Hussein. I mean, that was his specific testimony. That's exactly what he described in two of these incidents. And the other one was rogue policemen. If Saddam is not there, there's no reason for anyone to try to recruit him into the fedayeen Saddam. It's a fanatical group of people loyal to Saddam. He suggests that it should be remanded to look at the up-to-date country reports. No, Your Honor. But I'm glad you brought that up. The first thing that I said to petitioners, well, maybe the second thing, I said to petitioners' counsel was, you know, have you filed a motion to reopen in this case? Now, he speculates that it may be. Said it wouldn't reopen because they found adverse credibility. Well, that's his speculation that, well, or his explanation of his experience in other cases, that the judge probably won't reopen because there was an adverse credibility finding, and, you know, the board did not address that. Well, that's pure speculation. And in my view, if he did a motion. That's not pure speculation. That's the way the system works. He's speculating on what might happen if he files a motion in this case. Well, he's a lawyer. He's a good lawyer. He's one of the best I've seen. He's an excellent lawyer, Your Honor. I don't disagree. And so that's not speculation. It is speculation. Well. He doesn't know what the judge is going to do in this case. Respectfully, Your Honor, he doesn't know that. But here's what I'm saying. My understanding is if he wants to challenge. I know what you're going to do when I talk. You're going to interrupt me and start yelling at me. I can predict that. Pardon? It's easy to predict. I don't want to interrupt, but if I could just say. What's all the excitement about over here? Well, Your Honor, because I'm trying to explain. This poor Christian man here has suffered in that country, and you want to send him back? Is that what you want to do? Is that what we're supposed to do? We created a lot of the problems over there, too. It's on our heads as well. We've got to be careful with these folks. I'm trying to propose a way that the counsel could achieve what he wants to achieve, if you'll let me explain it, Your Honor. Well, go ahead and do it. If he files a motion to reopen, and if the judge denies it, because he had found the petitioner not credible in the past, he can appeal that again to the board. The board is going to have to look at the credibility finding. If the board reverses it, it goes back to the judge for consideration of new evidence. If the board sustains it, it comes back up to this court for a proper review of the credibility, of the adverse credibility finding that the judge initially made. One way or the other, he gets review of that credibility determination, and whether that was an appropriate basis to deny a motion to reopen. I'm just suggesting that it be done in the proper way. I don't think it's something respectfully. I think this case can be reopened and returned without this court trying to reach a way to do that. I think counsel should file that motion. In the meantime, he's not going to be returned. He has to stay from this court, and I know that the agency won't return him. In fact, no Iraqis are being removed at this time, so there's no danger of that. I apologize, Your Honor, if you didn't like my manner. I just wanted to explain my position on the case. Counsel, you're saying you don't like your manner. I don't like the cruelty of our government. That's what I don't like. Counsel, you're saying, in effect, he should follow the legal procedures to get that decided. Yes. We understand. Can I take a minute, Your Honor? This court noted in Avitova-Elisa, the Zenith Paradox of many of these immigration cases, that Arrow has to reach its target someday, and that's what we're trying to do. Do you still have time to file a motion to reopen? There's no time limits on a motion to reopen based upon asylum. So, yes, we can do that, Your Honor. But, again, it's a non-starter if there's a credibility issue. We're trying to reach the target just as soon as we can. That's the best way to reach the country reports, I suppose, right? That's absolutely correct. But as an officer of the court and presenting these cases every day, I can state, without speculation, that the judges almost invariably state, if I didn't find them credible the first time, I'm not going to find them credible now, despite a change in country conditions. One other clarification, Your Honors, or two, I'm sorry, real quickly. The government doesn't have to prove, in order to rebut the presumption of a wealth interferer persecution, that the Ba'ath Party and Saddam Hussein are gone. Rather, the standard is, is it safe to return to the country? And in the Mashiri v. Ashcroft case of an Afghan woman being returned to Germany, a democratic country, they found that even in that country the Afghan woman couldn't be returned because it was unsafe for her, so much so for Iraq. And finally, the judge ignored the evidence of record when he determined that the applicant's fear of return for religion was just general. Because the country reports that were submitted at the time specifically stated that Assyrians or fellow Christians experienced mob violence from Muslims. So it wasn't just his testimony. That country report also said that non-Arab citizens are forced to change their ethnicity on their documents, clearly showing a strong discrimination based upon religion. Thank you, Your Honors. Thank you. Matter is submitted.
judges: Pregerson, Fernandez, Siler